# W. J. BARNSTEAD
v.
## F. G. SNAPP.

*Chattel Mortgages—Originally Colorable Only—Transfer of to* Bona Fide *Purchaser—Date of Inception of Lien—Whether Prior to Delivery to a Vendee—Consent of wife to Husband's Pledge of her Property.*

1. A remark by a wife in conversation that under certain conditions she would consent to the pledge of her property to secure a loan to her husband is not sufficient authority for the execution of a mortgage by the husband on the property in question, nor does it constitute a ratification of such an act if already done.

2. The date of a transaction being material, it is *held,* That the evidence was not sufficient to support the verdict in the case presented, on this point.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. R. C. HUNT and G. W. PRINCE, for appellant.

Mr. C. D. HENDRYX, for appellee.

LACEY, J.   This was a replevin suit originally brought in a justice of the peace court by appellee against appellant to recover a mare valued at $100, and the case afterward appealed to the Circuit Court, where upon trial the verdict of the jury was in favor of the appellee and judgment rendered on the verdict for him and against the appellant for costs.

The appellee claimed title to the mare through a chattel mortgage dated May 23, 1888, given by Perry M. Wills to

his brother F. B. Wills to secure two promissory notes of
$100 each of the date of the mortgage and due in one and
two years from date bearing eight per cent interest, the mort-
gage being to pay $50 to F. G. Snapp who then held a mort-
gage on the horses.

This mortgage was filed for record May 24, 1888.

This mortgage was assigned by F. M. Wills to appellee
but the notes mentioned in it were never assigned but were
procured by him from the mortgagor P. M. Wills. The
appellee claims title through said mortgage of Perry M.
Wills and by an estoppel as claimed against his wife S. J.
Wills, who was the undisputed owner of the mare and through
whom both parties herein claim to derive title. The appel-
lant was the original owner of the mare but had sold her to
Mrs. S. J. Wills in the spring of 1888 and had purchased her
back on December 11, 1888, in pursuance of which sale a bill
of sale was drawn up and signed and delivered to appellant by
Mrs. Wills and the possession of the mare also delivered to
him on the same day which he held without interruption till
she was replevied. The notes and mortgage in question as
originally given were fraudulent and only colorable, the said
mortgagee, F. B. Wills, not knowing anything of their exist-
ence and there being no consideration for them.

These notes were given to the appellee by P. M. Wills and
the mortgage indorsed to him by F. B. Wills, on November 10,
1888, as claimed by appellee, or on January 8, 1889, or after-
ward as insisted on by appellant. The assignment was, no
doubt, based on a valuable consideration, passing between P. M.
Wills and appellee, but if the notes and mortgages ever had
any validity it was not until after the assignment, and this
must be accompanied by the consent of Mrs. S. J. Wills. The
date of this assignment becomes very material and is a fact
on which this case must turn for or against appellee. Also
whether Mrs. S. J. Wills consented to this assignment with
intention of allowing her husband to mortgage the mare to
appellee. We will now notice the evidence. Appellee testified
in chief, that on November 10, 1888, Perry M. Wills wanted
some money and on that date he " went with him to the court

house; I think that was the date; got the money and took it to Wills' brother at Colton's foundry; he wrote on it, he said he wanted to help his brother; never let Perry have any money till I saw his wife; I told her Perry wanted to mortgage the horses to me; she said she hated to let him do it,  *  *  * but if she thought he would do something she would do it."

But this evidence is very much weakened by his cross-examination, in which he says, "I can't tell the day I got the mortgage from the recorder's office;  *  *  * I can not say if it was in January or February I got the mortgage from the recorder's office; I don't know; I got it the day he got the money—the day I got it. The day I got it and went down and got Frank Wills to put his name on it ; it was close to that day; that day or the next. This is so long ago it is pretty hard to tell. I don't recollect whether I had the note in my hand when I got the mortgage.  *  *  * I am not able to swear that I had the note when I got the mortgage."

This evidence is worth but little as to the date when he took the mortgage out of the clerk's office, but as the deputy recorder swears, he took it, and not earlier than February 14, 1889, and the entry book offered by appellee in reference, shows that it was taken out January 8, 1889, the evidence that it was taken out in November or December, 1888, is not entitled to much weight. It matters not whether it was taken out in January, 1889, or February, it was long after appellant purchased the mare in question. After that time Mrs. Wills would have no power to consent to her husband mortgaging the mare. This she denies entirely, but even the consent which appellant claims, we think is not of that definite character that the law would require. She said "she would do it if she thought he would behave himself," but she did not say she thought he *would* behave himself. This was not when the transfer of the mortgage was made, or at least it does not so appear, but a casual conversation about a proposition to loan Perry the money, not about a transaction then pending to which her consent was asked. It seems to us this is not enough. It is not necessary for us to notice objections to instructions, as we regard the weight of the evidence so mani-

festly against the verdict that the judgment should be reversed. The judgment is therefore reversed and the cause remanded.

*Judgment reversed and remanded.*